IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANTAYA, LLC, DEVAYA, LLC, and DAKSHAYA, LLC, <br>       Plaintiffs, <br><br> v. <br><br> LINDY ENTERPRISES, LLC, and LINDY ABSECON, LLC, <br>       Defendants. | CIVIL ACTION <br><br><br> NO. 19-5776 |

DuBois, J.                                                                                    November 5, 2020

## **M E M O R A N D U M**

### I.     INTRODUCTION

This is a breach of contract case based on agreements for the sale of three fast food stores. Plaintiffs Dantaya, LLC ("Dantaya"), Devaya, LLC ("Devaya"), and Dakshaya, LLC ("Dakshaya") claim that defendants, Lindy Enterprises, LLC ("Lindy Enterprises") and Lindy Absecon, LLC ("Lindy Absecon"), improperly refused to close on one of the stores.

Presently before the Court is defendants' Motion to Dismiss the Complaint for failure to state a claim. For the reasons set forth below, the motion is denied.

### II.     BACKGROUND

#### A.   Asset Purchase Agreements

##### *i. General Provisions*

The facts as alleged in the Complaint, accepted as true for purposes of this motion, are as follows. On or about June 4, 2019, Dantaya and Lindy Enterprises entered into an Asset Purchase Agreement (the "Neptune APA") under which Dantaya agreed to purchase an Arby's store located in Neptune, New Jersey (the "Neptune Store"). Compl. ¶ 8. Around the same date,

Devaya and Lindy Absecon entered into an agreement (the "Absecon APA") under which Devaya agreed to purchase an Arby's store in Absecon, New Jersey (the "Absecon Store"), and Dakshaya and Lindy Enterprises entered into an agreement (the "Philadelphia APA") under which Dakshaya agreed to purchase an Arby's store in Philadelphia, PA (the "Philadelphia Store"). *Id*. ¶¶ 13, 14. The APAs state that Lynda Malone is the "sole member" of Lindy Absecon and Lindy Enterprises, and Ronak Pandya is the "managing member" of Dantaya, Devaya, and Dakshaya. *See, e.g.,* Neptune APA.

As set forth in the APAs, (a) defendants were required to "effectuate or cause to be effectuated, the assignment to [plaintiffs] of the Leases" for the three stores, and (b) plaintiffs were required to pay $200,000 for each store. *See, e.g., id.* ¶¶ 3.1, 8.1.

### ii. Provisions Regarding Closing

The parties amended the three APAs by Letter Agreement dated October 14, 2019 under which the parties were required to close on the Philadelphia Store by October 14, 2019, the Absecon Store by October 15, 2019, and the Neptune Store by no later than seven business days after the store's landlord "indicated in writing that it and its lender approved of the assignment of the Neptune store lease." Compl. ¶¶ 17–20. Critically, each APA states that "either party may terminate th[e] Agreement" if the parties fail to close on the other two APAs. For example, the Neptune APA states:

> The closing on the transaction contemplated by this Agreement is expressly conditioned upon the closing on the transactions contemplated by the two separate Asset Purchase Agreements for the Arbys franchised restaurants located in Philadelphia PA and Absecon NJ . . . In the event the transactions contemplated by the three Asset Purchase Agreements cannot all close by the Closing Deadline . . . then either party may terminate this Agreement without prejudice or penalty.

Neptune APA ¶ 2.01.

2

### B. Closing on the Philadelphia and Absecon Stores

The parties closed on the Philadelphia Store "in accordance with the Letter Agreement," and "all assets, leases, and operations" for that store were transferred to plaintiffs. Compl. ¶ 21. At closing of the Philadelphia Store, Dakshaya identified deficiencies in the store's equipment and, by agreement of the parties, "Defendants' attorney escrowed the sum of $5,000.00 . . . as a credit for repairs/replacements of the defective equipment." *Id*. ¶ 22. Moreover, by agreement of the parties, "Defendants' attorney escrowed the sum of $3,274.02 as an adjustment for advances made by the Coca-Cola Company to Lindy [Enterprises] with respect to product at the Philadelphia Store." *Id*. ¶ 24.

The parties closed on the Absecon Store "in accordance with the Letter Agreement," and "all assets, leases, and operations" for that store were transferred to plaintiffs. *Id*. ¶ 21. At closing of the Absecon Store, defendants "accept[ed] [an] adjusted purchase price"—Devaya adjusted the price by withholding $7,689.45: (a) $5,000 "as a credit for repairs/replacements of [ ] defective equipment" and (b) $2,689.45 "as an adjustment for advances made by the Coca-Cola Company to Defendants with respect to product at the Absecon Store." *Id*. ¶¶ 25, 26, 33.

### C. Termination of Neptune APA

On or about October 23, 2019, Lindy Enterprises sent a letter to Dantaya stating that "it was unilaterally terminating the Neptune APA" because Devaya failed to close on the Absecon Store. *Id*. ¶ 27; Compl. Ex. F. On November 13, 2019, plaintiffs' counsel responded to Lindy Enterprises by letter, stating that "[y]our claim that my client failed to close on the Absecon store is inconsistent with the fact that the Seller accepted monies from my client, transferred operations of that store to my client, and assigned the lease and franchise agreement for that store to my client." Compl. Ex. G. On November 14, 2019, defendants sent a letter to plaintiffs

3

"reiterating that Lindy [Enterprises] had unilaterally terminated the Neptune APA and indicating a continued intention not to close on the Neptune Store." Compl. ¶ 29.

### D. The Present Action

On December 6, 2019, plaintiffs filed the Complaint in this action, alleging one count of breach of contract on the ground that defendants "refused to close [on the Neptune Store] for no good reason." *Id*. ¶ 31. Plaintiffs seek, *inter alia*, compensatory damages and specific performance.

On February 7, 2020, defendants filed a Motion to Dismiss the Complaint for failure to state a claim. Plaintiffs filed their response on February 21, 2020, and defendants filed a reply on March 4, 2020. The motion is thus ripe for decision.

## III. LEGAL STANDARD

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *Liou v. Le Reve Rittenhouse Spa, LLC*, No. 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019) (DuBois, J.). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff[']s complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In

deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

IV. **DISCUSSION**

In their Motion to Dismiss the Complaint defendants allege that they were "entitled to terminate the Neptune APA" on the ground that plaintiffs were "in default of the Absecon APA." Defs.' Mot. at 5. That argument is based on defendants' claim that plaintiffs were "in default of the Absecon APA" because they failed to "remit the full Purchase Price." *Id*. Defendants also argue that plaintiffs are not entitled to specific performance. Significantly, defendants' arguments depend upon a disputed factual issue which cannot be resolved at this stage of the proceedings—namely, whether the parties closed on the Absecon Store.

A. **Choice of Law**

The APAs contain a choice of law provision stating that the agreements are to be construed according to New Jersey law.[1] *See, e.g.,* Neptune APA ¶ 11.6. "[C]hoice of law provisions will be enforced unless 'unreasonable.'" *Moore v. Rite Aid Hdqtrs Corp.*, No. 13-1515, 2017 WL 6525796, at *11 (E.D. Pa. Dec. 21, 2017) (DuBois, J.) (citing Restatement (Second) of Conflict of Laws § 187 (1988)). The parties have not stated any reason why the

---

[1] Defendants argue that it is unclear whether Pennsylvania law governs the APAs because Paragraph 11.7 of those agreements mentions Pennsylvania law. The Court rejects defendants' argument. Paragraph 11.7 involves severability. It states that, "[s]hould any provision of this Agreement be held unenforceable" under the laws of any jurisdiction, including Pennsylvania, the parties agree that, "for purposes of performance of this Agreement in such jurisdiction . . . such provision shall be deemed modified to the extent necessary to render it lawful and enforceable, or if such a modification is not possible . . . such provision shall be severed." That provision is inapplicable to the issues presented in the motion to dismiss which are governed by Paragraph 11.6, addressed above, titled "Governing Law and Jurisdiction."

5

application of New Jersey law would be unreasonable, and the Court has found none. Thus, the Court will apply New Jersey law in construing the APAs.

### B. Plaintiffs' Performance

Defendants argue that, because plaintiffs "failed to remit the full Purchase Price" and closing on the Absecon APA was therefore "unconsummated," the condition precedent to closing on the Neptune Store was not satisfied. Defs.' Mot. at 10. At the outset the Court notes that defendants' argument regarding plaintiffs' failure to close on the Absecon APA cannot be addressed by motion to dismiss on the present state of the record on the ground that there are contrary allegations in the Complaint.

"A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts § 224 (1981). "[W]here a promise is subject to a condition, no liability can arise upon that promise if the condition is not met." *First Atlantic Leasing Corp. v. Tracey*, 738 F. Supp. 863, 867 (D.N.J. 1990).

As an initial matter, plaintiffs allege that the parties "closed on [] the Absecon Store," and "all assets, leases, and operations" for that store were transferred to plaintiffs. Compl. ¶ 21. Furthermore, plaintiffs allege that they adjusted the purchase price for the Absecon Store by withholding $7,689.45, and defendants "accept[ed] the adjusted purchase price." *Id*. ¶ 33. Plaintiffs' allegations are supported by a pre-litigation letter from their counsel to Lindy Enterprises, which states that "the Seller accepted monies from my client for that store . . . the condition precedent to [] performance of that [Neptune] agreement . . . has occurred." Compl. Ex. G. Based on these statements, the Court concludes that plaintiffs have plausibly alleged the

parties closed on the Absecon Store and that this condition precedent to closing on the Neptune Store was satisfied.[2]

### C. Breach of Contract

To state a claim for breach of contract, a plaintiff must allege "1) the existence of a valid contract, 2) a material breach of the contract by the defendant, and 3) damages resulting from the breach." *Zacks v. NetJets Inc.*, No. 11-2537, 2011 WL 4387147, at *2 (D.N.J. Sept. 20, 2011). Defendants do not dispute that plaintiffs have adequately alleged the existence of a valid contract. Therefore, the Court focuses its analysis on whether plaintiffs have adequately alleged a material breach and damages.

#### i. Material Breach

A material breach occurs when "one party fails to perform essential obligations under the contract." *Medivox Prods. v. Hoffman-LaRoche, Inc.*, 107 N.J. Super. 47, 58 (1969). In determining the materiality of a breach of contract, New Jersey courts consider the following factors:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

---

[2] Defendants also argue that plaintiffs were "in default" under the Absecon APA because they failed to: provide a proposed closing statement, remit royalty fees to Arby's, and sign the proper licensing agreements. Defs.' Mot. at 5. These grounds for plaintiffs' alleged default are based on an exhibit to defendants' motion—they are not stated in the Complaint. As such, the Court does not address this argument in ruling on defendants' Motion to Dismiss the Complaint.

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Roach v. BM Motoring, LLC*, 228 N.J. 163, 175 (2017) (quoting Restatement (Second) of Contracts § 241 (1981)).

Plaintiffs have adequately alleged that defendants materially breached the Neptune APA. According to the Complaint, (a) defendants' refusal to sell the Neptune Store deprived plaintiffs of the benefit they expected from the Neptune APA; (b) plaintiffs can be compensated for their loss by an award of damages and specific performance; (c) plaintiffs suffered lost revenues and lost profits; (d) defendants never cured their failure to perform; and (e) defendants had "no good reason" for their conduct. Compl. ¶¶ 31, 38.

Furthermore, plaintiffs allege that defendants' "refusal to close on the Neptune Store . . . constitutes material breaches" of the Absecon and Philadelphia APAs "and places uncertainty on the rights and obligations of Devaya and Dakshaya as to their respective properties." *Id*. ¶ 35. The Court need not address whether defendants' refusal to close on the Neptune Store constituted a material breach of the Absecon and Philadelphia APAs because defendants do not raise this issue in their motion. As defendants state, "the crux of [the] arguments raised in their Motion to Dismiss" is that "Plaintiffs' failure to consummate the closing under the Absecon APA authorized Defendants to terminate the Neptune APA." Defs.' Reply at 1; *see also id.* at 2 ("Plaintiffs' failure to address its failure to consummate the closing under the Absecon APA" is "the basis" of defendants' motion). The Court addressed plaintiffs' alleged failure to close under the Absecon APA in § IV.B. of this Memorandum, *supra*.

### ii. Damages

To state a claim for breach of contract, a plaintiff must allege damages resulting from the defendant's breach. *DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1048 (D.N.J. 2011).

In this case, plaintiffs allege that "[a]s a direct and proximate result of Lindy's material breaches of the APAs, Plaintiffs have suffered significant damages, including but not limited to: a) Lost revenues; b) Lost profits; c) Expenses to repair/replace defective equipment; d) Attorney's fees; e) Costs of litigation." Compl. ¶ 38. Based on these allegations, the Court concludes that plaintiffs adequately pled damages resulting from defendants' alleged breach.

### D. Specific Performance

Specific performance is an appropriate remedy if relief at law—such as monetary damages—is inadequate. *Mantell v. Int'l Plastic Harmonica Corp.*, 141 N.J. Eq. 379, 390 (1947). "Under long established equity principles, a contract for the sale of real property is specifically enforceable by the purchaser. Presumptively, real property is unique and damages at law are an inadequate remedy for breach of a contract to sell it." *Pruitt v. Graziano*, 215 N.J. Super. 330, 331 (1987). Furthermore, New Jersey courts have ordered specific performance to enforce real property contracts involving less than a fee simple, e.g., contracts involving a leasehold interest. *See, e.g., Dover Shopping Center v. Cushman's Sons, Inc.*, 63 N.J. Super. 384, 394 (1960) (ordering specific performance to enforce lease of a bakery because "damages at law would be impractical and unsatisfactory").

In this case, plaintiffs aver that they contracted to acquire leases for the three Arby's stores. Given the presumptive uniqueness of real property, plaintiffs may claim that damages are an inadequate substitute for the promised performance. Restatement (Second) of Contracts § 360 (1981) ("[T]he difficulty of procuring a suitable substitute performance by means of money awarded as damages" is significant in determining whether damages would be adequate). Furthermore, the APAs state that nothing in the agreements "shall prevent or delay a party from seeking . . . specific performance" in the event of a breach of contract. *See, e.g.,* Neptune APA

¶ 11.6.  Therefore, the Court concludes that plaintiffs have adequately alleged they are entitled to specific performance.

V.     CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss the Complaint is denied.  An appropriate order follows.